UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TODD ANDAYA,                                     :
        Plaintiff,                              :
                                                 :  **MEMORANDUM DECISION**
v.                                               :
                                                 :  10 CV 7878 (VB)
ATLAS AIR, INC.,                                 :
        Defendant.                              :
-------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Todd Andaya commenced this action asserting he was terminated by defendant Atlas Air, Inc. ("Atlas"), in violation of Section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX"),[1] and Section 296 of the New York Executive Law. Defendant has moved for summary judgment on each of plaintiff's claims. (Doc. #19). For the following reasons, defendant's motion is GRANTED as to plaintiff's SOX claim.[2]

    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as to plaintiff's federal law claim and 28 U.S.C. § 1367 as to plaintiff's state law claim.

## BACKGROUND

    The parties have submitted briefs, statements of facts, and declarations with supporting

---

    [1] As the case law does, the Court refers to this provision interchangeably as "Section 806" and "Section 1514A."

    [2] Because the Court grants summary judgment on plaintiff's SOX claim, it will decline to exercise supplemental jurisdiction over plaintiff's state law claim. The Court observes that although the amended complaint alleges the Court possesses subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, plaintiff failed to allege either party's citizenship for diversity purposes or an amount in controversy. As diversity jurisdiction is not apparent on the face of the complaint, the Court does not find jurisdiction appropriate under Section 1332.

exhibits which reflect the following factual background.[3]

From 2001 to 2009, plaintiff worked as an independent contractor for Atlas. In late 2008, Atlas's Chief Financial Officer, Jason Grant, and its Vice President of Information Technology, Richard Barnes, invited plaintiff to join Atlas as Director of a newly created Project Management Office. At the time he offered plaintiff the position, Barnes knew plaintiff was gay.

Two employees reported to plaintiff in his position as director. Plaintiff's relationship with one of them, Anne Bari, was strained from the outset. Plaintiff described his relationship with the second employee, Aime Schiavone, as "okay," but noted neither employee wanted him there. Beginning in spring 2009, plaintiff's subordinates and peers began to complain about his conduct and management style. Schiavone complained to Jim Barrecchia, Senior Director of Information Technology, that plaintiff had "berated her" for talking to him. Bari, Barrecchia, and Paul Neville, Director of Development, complained to Barnes about the way plaintiff interacted with and supervised staff. Plaintiff claims he was not aware of these complaints until he reviewed them during discovery.

In April 2009, Human Resources Director Joseph Kelly met with Barnes, Barrecchia, Bill Dowling, Neville, and plaintiff to discuss their differences. After the meeting, Barnes told Kelly the individuals would resolve their differences without further intervention.

Plaintiff testified at his deposition that he would often remind employees that Atlas was a publicly traded company and warned them not to discuss stock prices openly. Plaintiff believed

---

[3] Plaintiff did not include a separate counter-statement of facts, but rather incorporated his factual statement in his opposition brief. Also, because the Court will decline to exercise jurisdiction over plaintiff's state law claim, it will not recount those facts that relate only to that claim.

such discussions violated SOX and SEC regulations. Plaintiff also complained to Barnes about employees working from home when they were not permitted to do so; employees not working their full shifts; issues related to internet reimbursement; and executive use of comp time. Plaintiff further complained about the IT department engaging a consultant which plaintiff believed was not necessary. In April or May 2009, plaintiff learned from Dowling and Schiavone of Barrecchia's practice of accepting fees for speaking engagements for vendors in his capacity as Senior Director of IT. Upon learning of this, plaintiff complained to Barnes who told him that Barrecchia's conduct was inappropriate. To plaintiff's knowledge, no corrective action was taken. Further, shortly before his termination, plaintiff objected when Barnes left an executive meeting to tell the directors, including plaintiff, that because the company was doing well, the stock price would likely increase. Plaintiff believed that because he was permitted to purchase stock in Atlas, he should not be privy to conversations concerning stock prices. Plaintiff believed each of these actions violated SOX and/or SEC regulations because they disclosed confidential information, potentially promoted insider trading, and wasted corporate assets. Plaintiff estimated millions of dollars were wasted.

On November 16, 2009, Barrecchia, Neville, Bari, Schiavone, and Dowling submitted a written complaint concerning plaintiff to Barnes. Grant, the company's Chief Financial Officer, interviewed four of the five complaining employees. On November 16, Grant advised Barnes to terminate plaintiff, and plaintiff was terminated that day.

## DISCUSSION

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

3

P. 56(c); Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," summary judgment may be granted. Anderson v. Liberty Lobby, 477 U.S. at 249-50. The mere existence of a scintilla of evidence in support of the nonmoving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. Nagle v. Marron, 663 F.3d 100, 105 (2d Cir. 2011). If there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

To sustain a claim for retaliation in violation of SOX, plaintiff must show (1) he engaged in a protected activity or conduct; (2) the employer knew or suspected, actually or constructively, he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) "[t]he circumstances were sufficient to raise the inference that the protected

4

activity was a contributing factor in the unfavorable action." Gattegno v. Admin. Review Bd., 353 Fed. Appx. 498, 500 (2d Cir. 2009) (quoting 29 C.F.R. § 1980.104(b)(1)).

Defendant first argues that as a non-publicly traded company, it is not bound by Section 806 of SOX. See Brady v. Calyon Sec. (USA) Inc., 406 F. Supp. 2d 307, 318 (S.D.N.Y. 2005) ("The Act makes plain that neither publicly traded companies, nor anyone acting on their behalf, may retaliate against qualifying whistleblower employees. Nothing in the Act suggests that it is intended to provide general whistleblower protection to the employees of any employer whose business involves acting in the interests of public companies."). In July 2010, the Dodd-Frank Act amended Section 806 to make it applicable to "any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such [publicly traded] company." 18 U.S.C. § 1514A(a); see also Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 929A, 124 Stat. 1376 (2010). Because this amendment is a "clarifying" amendment, meant to correct a misinterpretation rather than effect a substantive change in the law, it applies retroactively to conduct predating the 2010 amendment, such as the conduct here. Johnson v. Siemens Building Techs., Inc., ARB Case No. 08-032 at 8-9, ALJ Case No. 2005-SOX-015, 2011 DOLSOX LEXIS 16 (Dept. of Labor ARB Mar. 31, 2011); see also Gladitsch v. Neo@ogilvy, Ogilvy, Mather, WPP Group USA, Inc., 2012 U.S. Dist. LEXIS 41904, at *11 (S.D.N.Y. Mar. 21, 2012).[4] Defendant does not dispute that it is a subsidiary of a publicly traded corporation whose financial statements are included in its parent company's

---

[4] As the Gladitsch court recognized, "Congress explicitly delegated to the Secretary of Labor authority to enforce § 1514A by formal adjudication, and the Secretary has delegated her enforcement authority to the ARB." Gladitsch v. Neo@ogilvy, Ogilvy, Mather, WPP Group USA, Inc., 2012 U.S. Dist. LEXIS 41904, at *11-12 n.4 (citing 18 U.S.C. § 1514A(b) and 67 Fed. Reg. 64,272,64,273 (Oct. 17, 2002)).

report. Therefore, defendant is subject to SOX.

Defendant next contends that plaintiff did not engage in any activity which is protected by SOX. Section 1514A defines protected activity to include the provision of information regarding conduct the employee "reasonably believes constitutes" a violation of: (1) 18 U.S.C. §§ 1341, 1343, 1344, or 1348; (2) "any rule or regulation of the [SEC]," or (3) "any provision of Federal law relating to fraud against shareholders." Vodopia v. Koninklijke Philips Elecs, N.V., 398 Fed. Appx. 659, 662 (2d Cir. 2010); 18 U.S.C. § 1514A(a)(1); see also Fraser v. Fiduciary Trust Co. Int'l, 2009 U.S. Dist. LEXIS 75565, at *14 (S.D.N.Y. Aug. 25, 2009); Allen v. Admin. Rev. Bd., 514 F.3d 468, 476-77 (5th Cir. 2008). The list is exhaustive, and for an action to qualify as a protected activity, the "employee's communications must definitively and specifically relate to one of the listed categories of fraud or securities violations in 18 U.S.C. § 1514A(a)(1)." Vodopia, 398 Fed. Appx. at 663; see also Van Asdale v. Int'l Game Tech., 577 F.3d 989, 996-97 (9th Cir. 2009). As several courts have observed, the employee's allegations of wrongdoing must resemble the allegations of shareholder fraud. See Day v. Staples, Inc., 555 F.3d 42, 55 (1st Cir. 2009); Van Asdale, 577 F.3d at 1001 (9th Cir. 2009); but see O'Mahony v. Accenture Ltd., 537 F. Supp. 2d 506, 517 (S.D.N.Y. 2008) (reading Section 1514A as applying to any conduct which violates 18 U.S.C. §§ 1341, 1343, 1344, or 1348 even if it does not relate to shareholder fraud).

In addition, "the complaining employee's belief that his employer's conduct violated one of the enumerated categories must be both objectively and subjectively reasonable." Fraser v. Fiduciary Trust Co. Int'l, 2009 U.S. Dist. LEXIS 75565, at *14-15 (citing Marshall v. Northrup Gruman Synoptics, 2005-SOX-0008, 2005 DOLSOX LEXIS 63, at *2 (U.S.D.O.L. June 22, 2005)), aff'd, 396 Fed. Appx. 734 (2d Cir. 2010); see also Allen v. Admin. Review Bd., 514 F.3d

at 477; Livingston v. Wyeth, Inc., 520 F.3d 344, 352 (4th Cir. 2008) ("[Plaintiff] must show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation."). The employee need not specifically identify to the employer what laws the employer's conduct violates, see Fraser v. Fiduciary Trust Co. Int'l, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006), but he must complain of conduct which he reasonably believes "definitively and specifically relate" to conduct included in Section 1514A. See Welch v. Chao, 536 F.3d 269, 276-77 (4th Cir. 2008). The law does, however, protect "an employee's reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories." Allen, 514 F.3d at 477. To determine whether the employee's belief is reasonable, the Court considers "the knowledge available to a reasonable person in the circumstances with the employee's training and experience." Mahony v. KeySpan Corp., 2007 U.S. Dist. LEXIS 22042, at *14-15 (E.D.N.Y. Mar. 12, 2007).

Despite his arguments to the contrary, plaintiff has failed to identify any way in which the conduct he complained about related to any conduct proscribed by 18 U.S.C. §§ 1341, 1343, 1344, or 1348 – i.e. mail fraud, wire fraud, bank fraud, or securities fraud – or any rule or regulation promulgated by the SEC. The factual background advanced by plaintiff does not include any fraud perpetuated using the United States Postal Service or other interstate carrier, 18 U.S.C. § 1341, or "wire, radio, or television communication." 18 U.S.C. § 1343. Absent evidence of these elements of the crimes, plaintiff cannot maintain that his complaints related to actions violating these sections. In his affidavit, plaintiff states Barnes, Barrecchia, and Grant used the telephone, mail, and internet to perform the actions of which plaintiff complained. What is missing from these allegations is criminal conduct, shareholder fraud, or fraudulent

7

intent. See Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000) (noting that allegations accounting irregularities need to be "coupled with evidence of corresponding fraudulent intent" before stating a securities fraud claim); Day v. Staples, Inc., 555 F.3d at 57. Without such evidence, the Court cannot conclude plaintiff complained of any fraud which would trigger Section 1514A(a)(1) liability.

In addition, there is insufficient evidence before the Court to conclude plaintiff's complaints related to bank fraud under 18 U.S.C. § 1344 or securities fraud under 18 U.S.C. § 1348.

In Day v. Staples, Inc., the First Circuit Court of Appeals held that disclosures related to corporate practices that did not maximize profits did not constitute "protected activities" under Section 1514A. Day, 555 F.3d at 56. In so holding, the Court found that the employee's belief was not reasonable because he failed to demonstrate how the practices he reported were related to shareholder fraud. Id. The Court also concluded a corporation may reasonably decide to sacrifice short-term profits, and that decision does not implicate shareholder fraud. Id. Finally, the Court relied upon the fact that any misconduct was not reported to shareholders or included in the corporation's financial reports. Therefore, it did not constitute shareholder fraud. Id. at 57; see also Platone v. U.S. Dep't of Labor, 548 F.3d 322, 327 (4th Cir. 2008) (holding that under Section 1514A, "a complainant must alert management to more than the fact that the company's near-term profits were affected by billing discrepancies in order to meet the standard of definitively and specifically alleging mail or wire fraud" and rejecting claim of plaintiff who never articulated theory of how employer was defrauding shareholders to the employer); Mann v. Fifth Third Bank, 2011 U.S. Dist. LEXIS 44853, at *32 (S.D. Ohio Apr. 25, 2011) (dismissing claim where plaintiff failed to proffer any evidence of employer's intent to deceive

8

shareholders).

Plaintiff does not explain how his complaints about (a) employment and staffing issues; (b) general corporate waste; (c) Barrecchia's taking fees to speak to vendors; and (d) excessive consulting fees implicate any of the subjects identified by Section 1514A. There is no indication these complaints related to information which would be reported in financial statements, or, with the case of Barrecchia's fees, how the underlying conduct was even fraudulent. Further, plaintiff does not address defendant's intent to deceive shareholders. Plaintiff falls short of demonstrating he engaged in protected activities insofar as his complaints did not address subjects contemplated by SOX. There is no indication in the record that plaintiff's training, education, or experience would give him sufficient knowledge or expertise to conclude the conduct of which he complained violated Section 1514A. See Day v. Staples, Inc., 573 F. Supp. 2d 336, 346-347 (D. Mass. 2008), aff'd, 555 F.3d 42 (1st Cir. 2009). While plaintiff may have believed the actions violated SOX, the Court finds that such belief was not reasonable as the actions do not reasonably relate to the issues relevant to Section 1514A.

Furthermore, plaintiff's reminders to employees about open discussions of stock prices and his criticism to Barnes about discussions of stock prices also do not implicate shareholder fraud or violations of the securities laws. Employers are free to be optimistic to their employees about the state of the corporation and its prospects for the future. Expressing a belief that stock prices will rise does not directly endorse or condone insider trading or other violations of the securities law. See Novak v. Kasaks, 216 F.3d at 315 (noting "economic projections, expressions of optimism, and other puffery" do not constitute securities fraud). The Court credits that plaintiff may have believed such actions by Barnes and other supervisors and executives may have implicated the securities law. Such belief, however, was not reasonable.

Therefore, plaintiff has not engaged in any protected activities, and he cannot sustain a whistleblower claim.

The Court is aware that Section 1514A is meant to protect an employee who reveals corporate malfeasance that implicates shareholder fraud or criminally fraudulent conduct. As such, it should be construed broadly so as to protect whistleblowers. In this instance, however, Andaya's complaints largely related to internal corporate policies concerning corporate waste, personnel matters, and relationships with vendors. These are not the subjects courts have found covered by SOX. In addition, plaintiff's fears of potential insider trading do not suffice to meet the law's requirement that the disclosures relate to SEC rules or regulations insofar as there was no evidence of insider trading. Instead, plaintiff feared that optimistic statements by executives regarding stock prices would lead to insider trading. This is different than reporting insider trading itself. See Livingston v. Wyeth, Inc., 520 F.3d at 352 (observing that plaintiff must have reasonable belief about current violations of the law). Finding that plaintiff's conduct is protected by SOX would curtail executives from talking positively about their companies even if such conduct is not actionable under the securities laws. The Court's ruling hopes to strike a balance between encouraging whistleblowing when appropriate and permitting executives and upper level management to speak positively about their companies. Finding that plaintiff's comments to Barnes about his fears of public discussions of stock prices not to have been protected serves this aim.

Having dismissed the federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claim pursuant to 28 U.S.C. § 1367(c)(3). This claim is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the pending motion and close this case.

Dated: April 30, 2012
       White Plains, New York

                          SO ORDERED:

                          _____
                          Vincent L. Briccetti
                          United States District Judge